**THE ABOUSHI LAW FIRM PLLC**

**1441 Broadway Fifth Floor**                                                          **4922 4ᵗʰ Avenue 2ⁿᵈ Fl**
**New York, NY 10018**                                                                **Brooklyn, NY 11220**
**Telephone: (212) 391-8500**                                                       **www.Aboushi.com**

April 29, 2026

VIA: Electronic Mail
jmclaren@law.nyc.gov
Joanne M. McLaren
New York City Law Department
Special Federal Litigation Division
100 Church Street, 3rd Floor
New York, New York 10007

RE: *Steadman v. City of New York, et al*,
    25-cv-04081 (RER)(MMH)

Dear Ms. McLaren,

As you know we represent the Plaintiffs in this matter. We write with regard to the City's deficiencies in its April 13, 2026 responses to Plaintiffs' First Set of Demands and Interrogatories.

Most of the objections interposed have no basis and should simply be removed or corrected. Defendants' response raises serious concerns as the City previously requested a 40-day extension of time to provide responses to Plaintiffs' demands precisely because you were "waiting for documents and information about the Steadman protests" *See* your March 3, 2026 email; *see also* Joint Status Letter, ECF No. 41 ("On March 4, 2026, Plaintiffs served their discovery responses. Defendants' discovery responses were due that same date, but they requested a 40-day extension because their counsel is awaiting documents and information about the Steadman protests. On this basis, Plaintiffs consented to Defendants request.").

As you know, the parties are required to meet and confer pursuant to section V(B)(1)(a) of Judge Henry's Individual Practice Rules, before filing a motion. By May 4ᵗʰ, please provide a date and time when you are available to meet and confer by May 8, 2026, to discuss the deficiencies outlined below, what the Defendants will be providing, and when.

I.     **Defendants' Boilerplate Objections violate the 2015 Amendments to the Federal
       Rules of Civil Procedure.**

As an initial matter that cuts across Defendants' responses, Defendants fail to conform to the 2015 amendments to the FRCP, which were implemented to bar the exact type of boilerplate, vague responses that Defendants have employed here. It is no longer acceptable to list a series of objections and then at the end state vaguely what may or may not be produced. Since 2015, FRCP 34(b)(2)(C)

1

has been clear that "An objection must state whether any responsive materials are being withheld on the basis of that objection" and that an "objection to part of a request must specify the part and permit inspection of the rest." As such, the majority of Defendants' responses and objections are inadequate and operate to waive objections for vagueness, relevance, burden, proportionality, and breadth. *See Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("From now on in cases before this Court, any discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege)."). Additionally, "'[a]n objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad" although "[a]n objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'" *Id*. at *2-4 (citing 2015 Advisory Committee Notes to Rule 34).

Additionally, "meaningless boilerplate" objections such as statements that requests are "overly broad and unduly burdensome" that does not explain why the requests are burdensome or how they are overbroad are "improper unless based on particularized facts" that are articulated as part of the objection. *Id*. at *8. Indeed, even pre-2015, "boilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse." *Jacoby v. Hartford Life & Accident Ins. Co*., 254 F.R.D. 477, 478 (S.D.N.Y. 2009).

> a. **Defendants improperly assert non-specific, vague, and boilerplate objections, in violation of the 2015 Amendments to the Federal Rules of Civil Procedure, and then compound this abuse by failing to state what documents, if any are being withheld based on each objection.**

Defendants did not state whether they have withheld any responsive materials on the basis of these objections, and, if so, which documents they have withheld, on the basis of which objection, despite the clear mandates of Fed. R. Civ. P. 34(b)(2)(C). That is improper. *See Michael Kors, L.L.C. v. Su Yan Ye*, No. 18-CV-2684 (KHP), 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019) ("Rule 34 imposes the responsibility on a responding party to state what it is withholding or describe the scope of the production it is willing to make, including the parameters of the search to be made (i.e., custodians, sources, date ranges and search terms, or search methodology)."). Defendants cannot interpose multiple, overlapping objections that make it impossible to know what is being withheld (if anything) based on each specific objection. Defendants must amend their responses to clarify what if any documents are being held and what searches if any are underway.

Defendants must unambiguously commit to amend their responses to state whether they are withholding documents, or are refusing to search for documents, based on each and every objection interposed, and make such amendment within five days thereafter. To be clear: ***Each individual objection should be followed by a clear statement as to whether documents are being withheld based on that objection, and if so, it should then state exactly the documents or categories of documents that are being withheld pursuant to that individual objection***. Each individual objection should also be followed by a statement of whether Defendants have contracted the scope of documents reviewed or searched based on the objection, along with a statement of exactly what investigative efforts Defendants have undertaken.

> b. **Defendants improperly claim that defined terms, and words with plainly**

**understood—or explicitly defined by governing rules or the requests—meanings, are vague.**

Defendants repeatedly claim terms with plain meanings[1]—or, indeed, terms defined by the Local Rules or the Requests themselves—are vague and undefined. These objections then improperly fail to state how Defendants limited their responses or interpreted the terms they claim are ambiguous. So each is improper on its face, since they do not "help[] … understand what about the request is vague or ambiguous." *Caprate Events, LLC v Knobloch*, No. 17-CV-5907-NGG-SJB, 2018 US Dist LEXIS 227238, at \*5 (EDNY Apr. 18, 2018). Instead, the objections are "vacuous boilerplate." *Id.*, *citing Fischer*, 2017 US Dist LEXIS 28102, at \*8. None of these objections based on vagueness or ambiguity have any validity, and they should be removed from the Responses at or before our meet and confer, and going forward. *See Caparte Events, LLC*, 2018 US Dist LEXIS 227238, at \*5.

Nonetheless, below are explanations of how each term is not vague, and why we expect Defendants to withdraw the objections:

i.  In Response to Interrogatory No. 1, Interrogatory No. 10, Doc. Request No. 6, and Doc. Request No. 9, Defendants further object on the grounds that the phrase "at or near" is vague and ambiguous.  Interrogatory Responses at pp. 2, 12-14; Doc. Responses at p.11, 20,

> Plaintiffs' use of plain language is not "vague" and "ambiguous." The Interrogatory seeks to identify individuals specifically "performing official duties," with regard to a specific list of protests, "at or near" such protest locations.  "Near" is a term the City understands well in this context. For example, it insisted, in the *In re New York City Policing During Summer 2020 Demonstrations* (20-cv-8924) Consent Decree ("*In re Policing* Consent Decree"), on including a term that specifically reserved the right that "NYPD may station additional officers ***nearby*** but off-scene" when policing protests. *In re Policing* Consent Decree ¶ 46 (emphasis added). To the extent it alleviates confusion, we can specify that this is the sense of "near" used here.

ii. In Response to Interrogatory No. 4 and Interrogatory No. 10, Defendants object on the grounds that the phrase "involved in the police response" and similar uses of "response" are vague and ambiguous. Interrogatory Responses at pp. 5-6,

> Defendants claim that "response" is vague and ambiguous is disingenuous. "Response" is a quite common term that encompasses a reaction or action taken towards something.
>
> More, once again, the City used the term in the *In re Policing* Consent Decree, for example, discussing that "the FAA Senior Executive shall play an active role in the preparation of the Department's ***response*** to planned or anticipated FAAs." *In re Policing* Consent Decree ¶ 22; *see also, id.* ¶ 36 ("NYPD shall employ a tiered ***response***" to protests; "NYPD shall begin its ***response***" to a

---

[1] Because of the nature of Defendants' improper responses, we move through them issue by issue, rather than request by request. There is, of course, some meaningful overlap in the problems within any particular response. But it would be far more repetitive to repeat the same issue for each request the boilerplate or other improper objection appears in.

3

protest).

In this case, Plaintiffs are seeking the responses by officers from the Legal Bureau to the protests enumerated in Schedule A. Defendants should search and produce all documents involving all reactions, actions, verbal, written, or recorded, by these officers at these protests.

iii.    In Response to Interrogatory No. 5, Defendants object on the grounds that the phrase "assigned" is vague and ambiguous as it does not specify what assignment or location "assigned" is referring to, and on the grounds that the phrases "who performed any of the 'Assignments' described in Sections I and II of the March 2019 SRG Guide" and "the equivalent sections" are vague and ambiguous. Interrogatory Responses at p. 6.

This response is disingenuous. "Assigned" is the cognate of "assignment," taken from Defendants' own policies. Defendants allege that terms used in the NYPDs own policy are vague and ambiguous. As these terms are taking from the patrol guide and Plaintiffs have cited the specific patrol guide in the City's possession, Defendants' objection is without merit.

iv.    In Response to Interrogatory No. 6, Defendants object on the grounds that the phrases "stopped, detained, questioned or arrested," "processed 'on-line,'" "at or near" and "involved in each of the encounters" are vague and ambiguous. *Id.* at p. 9.

Again, these terms are used throughout the NYPD Patrol Guide, especially stopped, detained, questioned and arrested. Indeed, that is the process by which an officer effectuates an arrest.

v.    In Response to Interrogatory No. 7, Defendants object on the grounds that the terms "complaint" and 'at or near" are vague and ambiguous. *Id.*

"At or near" is addressed above.

Meanwhile, to say that "complaint" as used in "a complaint to any agency" is vague is completely without merit. The term has a clear meaning, particularly given the list of things that the request includes (e.g., complaints to the CCRB, DOI, NYC Law Department). Complaint means an "expression of grief, pain, or dissatisfaction" and "a formal allegation against a party." Moreover, it has an obvious meaning with regard to particular agencies. For example, consider this from the CCRB's website:

4



That is the sense in which the requests use the word "complaint."

vi.    In Response to Interrogatory No. 8, Defendants object on the grounds that the phrase "each and every Officer" is overly broad, the phrase "associated with or otherwise involved in the factual circumstances giving rise to any and all Complaints" is overly broad, vague and ambiguous, and unintelligible, the phrase "at or near" is vague and ambiguous, and the phrase "any and all Complaints by persons identified in response to Interrogatory No. 7" is vague and ambiguous and unintelligible as the only people who brought the Complaint in this action are the named Plaintiffs whom Defendants have not named in response to Interrogatory No. 7." Interrogatory Responses at p. 6.

Defendants' response to Interrogatory No. 8 is contingent on the validity of their purported confusion about the word "complaint," and invokes Defendants' related failure to properly answer Interrogatory No. 7. Since those objections are improper and rely on the mistaken notion that "complaint" is vague, the derivative objections here do not lie.

vii.    In Response to Interrogatory No. 9 and Document Request No. 17, Defendants object on the grounds that the phrase "recommended to receive . . . discipline" is vague and ambiguous as it does not specify in whose opinion discipline was recommended. Interrogatory Responses at 11; Doc. Responses at p. 31.

Defendants' confusion here again rests on a misunderstanding of their own policies. For example, the role of the CCRB is to recommend discipline: "When the Board substantiates allegations of misconduct against a member of the NYPD it recommends [sic] the following types of discipline." *NYPD Discipline*,            CCRB,            avalable            at https://www.nyc.gov/site/ccrb/complaints/complaint-process/police-discipline.page.

These requests cover any recommendation an officer receive discipline.

viii.    In Response to Interrogatories Nos. 12 and 13, Defendants object on the grounds that the phrases "each...person identified in the Complaints" and, "their conduct" are vague and ambiguous.  Interrogatory Responses at pp. 15-17.

There is nothing vague about this. For each person identified in the complaint, Defendants need to identify each Officer who observed the person or their conduct. For example, if an Officer claims to have observed any Plaintiff commit a criminal offense, that Officer must be identified here.

ix.     In Response to Interrogatory No. 15, Defendants object on the grounds that the phrase "each Doe Defendant described in the Complaint" is "vague and ambiguous, and assumes facts not established, i.e., that officers exist who performed actions as alleged in the Complaint, attributed to John or Jane Does." Interrogatory Responses at p. 18.

This is not vague. The use of John Doe Defendants is a well-established method of identifying Defendants whose names are not known to Plaintiffs. Defendants may not use the knowledge disparity as a weapon to avoid engaging in discovery and must remove these baseless objections and provide the requested information.

x.     In Response to Document Demand Nos. 1 and 2, Defendants object on the grounds that the phrase "Officers' identification of [pro-Palestine/antisemitic/anti-muslim/anti-Israel/pro-Israel/anti-Israel] support, speech, demonstrations, and protests" is vague and ambiguous. Doc. Responses at pp. 5-6; 7.

This is not "vague and ambiguous." Members of the NYPD are charged with enforcing hate crime laws. At a press conference earlier this year, the Police Commissioner specifically claimed a 182% surge in antisemitic hate crimes (Staff, *Antisemitic hate crimes in NY surge by 182% in January 2026 compared to previous year,* Jerusalem Post (Feb. 4, 2026)), so presumably Defendants have *some* way they have trained officers to identify at least "antisemitic" acts. The same principle applies to the other concepts. If Defendants are genuinely asserting confusion, we are open to a meet and confer.

xi.     In Response to Document Demand No. 2, Defendants object on the grounds that the phrase that the phrase "critique, evaluation, or review" is vague and ambiguous and overly broad as it does not specify whose critique, evaluation, or review is sought. *Id.* at p. 7.

Plaintiffs' demand is clear. Any critique, by any one, in the City's possession, is responsive. The request's core seeks things like after action reviews, other formal reviews, and the like, but requires a reasonable search that would cover things like, for example, if a high-ranking member of the NYPD offered specific critiques of the use of force during a specific protest. Again, we are open to discussion, but this is not a genuine assertion of confusion.

xii.     In Response to Document Demand No. 7, Defendants object on the grounds that the phrases 'other written documentation of any kind" and "[a]ll instructions or directives regardless of form" and "police equipment and uniforms . . . to be worn or possessed" are vague and ambiguous. Doc. Responses at p. 13.

6

Again, this is not a genuine objection. Officers receive instructions — in various forms — on what uniforms they should wear. For example, SRG might be directed, for a particular protest, to arrive in riot gear. Any such direction, or other direction that fits the language above, must be produced.

xiii.   In Response to Document Demand No. 8 Defendants object that the phrase "deployment text message thread" is "vague and ambiguous and assumes facts not established, i.e., that officers were deployed by text message." Doc. Responses at p. 17.

This response appears to be from attorney failure to consult the Defendants. At least as of 2020, the NYPD's current practice at protests was to have command officers on a text thread, which they specifically refer to in creating them as the "text thread for tonight[']s deployment." *Rodriguez v. City Of New York*, 21-cv-10815, ECF No. 107-1 at 3 (SDNY).

We note that in *In re Policing*, the City's lawyers initially falsely stated there were no text messages, but were ultimately forced to produce them after we found video showing officers texting.

More, "assumes facts not in evidence" is not a discovery objection. If you think we are wrong that text messages exist, the response is to say there are no responsive documents, not to object. Making this objection serves only to obfuscate that documents do exist and are being improperly withheld.

xiv.   In Response to Document Demand No. 8 Defendants claim the phrases "information . . . reviewed in advance of and during the Protests," "any spreadsheets or other lists of "scheduled" and "unscheduled" events during the time period surrounding each Protest," and "other documents[] concerning NYPD's deployment or assignment of Officers and resources" are vague and ambiguous and overly broad, and "any press efforts by NYPD concerning the specific Protest" and "the operation any Incident Command Post utilized" are vague and ambiguous. Doc. Responses at pp. 17-18.

This objection again appears to reflect a lack of familiarity with NYPD practice. There are daily lists of "scheduled" and "unscheduled" events circulated at NYPD, as part of planning for how to respond to protests and other events; they were even produced in *In re Policing*.[2] Likewise, it is nonsensical to claim Defendants do not understand the request for documents concerning press efforts about the specific Protest at issue or the operation of an Incident Command Post.

If there is sincere confusion, we are happy to meet and confer. But otherwise, we expect these objections withdrawn.

xv.   In Response to Document Demand No.9, Defendants object that the phrase "stopped,

---

[2] More on this later, but they were produced as CONFIDENTIAL with (improper) blanket designations, so we cannot use them. But saying that such documents exist, we do not think, violates the order, particularly given the number of times production of documents is referenced in the Responses. Nonetheless, if you think this is improper, please alert us immediately so we can redact and seal the relevant text when and if we file this as an exhibit to a motion.

detained, questioned or arrested" is vague and ambiguous.

This objection is without merit. These words have their ordinary legal meaning. *See generally, e.g., Floyd v City of NY*, 283 FRD 153 (SDNY 2012).

xvi. In Response to Document Demand No. 10, Defendants object on the grounds that the phrases "persons stopped" and "any and all officers involved" are vague and ambiguous. Doc. Responses at pp. 21-22.

The phrase "persons stopped" is plain and cannot seriously be called "vague." It means the people stopped — in the ordinary legal sense that "police officers are permitted to briefly stop any individual, but only upon reasonable suspicion that he is committing a crime," *Floyd v City of NY*, 283 FRD 153, 158 (SDNY 2012) — by police at the Schedule A protests. Likewise, "any and all officers involved" is clear: Those officers involved in the stop.

xvii. In Response to Document Demand No. 11, Defendants object on the grounds that the phrases "number of summonses related to those Arrests issued" and "number of arrests processed on-line related to those Arrests" are vague and ambiguous. Doc. Responses at p. 23.

Plaintiffs' phrasing is plainly clear. The relevant request seeks documents "sufficient to" determine the "total number of summonses" issued at the Schedule A protest locations. Likewise, NYPD processes some arrests online, including with the OLBS, or **On[-L]ine** Booking Sheet. The request seeks documents sufficient to determine the number of arrests that were processed online.

xviii. In Response to Document Demand No. 13, Defendants object on the grounds that the phrase "race and gender" is vague and ambiguous and that the request is somehow "ambiguous and assumes facts not established (i.e., that force was used)." Doc. Responses at p. 25.

The idea that there was no force used at **any** Schedule A protest is a bizarre assertion. Defendants have specifically asserted uses of force were justified in this case (ECF No. 43 ¶ 368[3]), and in public comments about various of the Schedule A protests. Accordingly, even if "assumes facts not established" were a coherent discovery objection (it is not, since the correct answer is "no responsive documents exist if a fact is incorrectly assumed), it is misplaced here.

The claim "race and gender" in this context is somehow ambiguous seems to be a suggestion the City does not understand the meaning of the many laws requiring it to track the "race" and "gender" of the people the NYPD interacts with. *See, for example*, N.Y.C. Admin. C. § 14-150(a)(3) (requiring the City to

---

[3] To assert an affirmative defense, a party needs to plead facts. Accordingly, Plaintiff understands Defendants to be pleading that force was used and that it was justified. While Defendants' affirmative defenses are generally not plausibly pled, but that is an issue for another time.

track and submit "the number of stop, question and frisks by race and gender for each patrol precinct"). We mean the phrases in the same sense as the laws that require the City to collect relevant data in a variety of contexts.

xix.    In Response to Document Demand No. 14, Defendants object on the grounds that the phrases "all Documents," "any incidents," "related complaints," "log entries," "record reviews," "other documents collected, considered or reviewed" and "any occurrence that happened" are vague and ambiguous. Doc. Responses at pp. 26-27.

> "Documents" is a word defined in the local rules, and accordingly cannot be vague, unless Defendants are claiming not to understand the Rules. *See* Local Civ. R. 26.3(c)(2) ("The term 'document' is defined to be synonymous in meaning and equal in scope to the usage of the term 'documents or electronically stored information' in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.").

> "Incident" is not vague in the context of "incidents currently or formerly under investigation." The CCRB uses it, for example, in asking people to "Tag the CCRB on Instagram or Twitter in a photo or video of the incident." *How to file a complaint with the CCRB*, CCRB, *available at* https://www.nyc.gov/site/ccrb/complaints/file-complaint.page.          NYPD frequently uses the word "incident" across a variety of sorts of investigation, and its use here is no different.

> "Log entries" is not vague; that is what the CCRB (among others) calls their notations denoting specific actions in an investigation. Likewise, "record reviews" and "other documents collected, considered or reviewed" have a plain (and frankly, obvious) meaning in context, particular when placed in a list next to "determinations, disciplinary recommendations, settlement offers, case analysis, or other outcome recommendations": They cover whatever records and documents reflecting review of records collected in the course of an investigation into anything that happened at a Schedule A protest.

> Likewise, while "any occurrence that happened" without the other part of the phrase may be vague, "asking for a variety of documents "with respect to any occurrence that happened at such Protest Location" is not, and in fact, places a clear limit on what the request calls for.

xx.    As far as the first item above, relatedly, Defendants seem to object to the word "concerning" and "communications" in some places. *See, e.g.,* Doc. Request No. 18 ("all Documents concerning communications" is ambiguous), 19 (same), 47.

> "Concerning" is defined by the local rules, specifically to avoid disputes like the ones Defendants are raising. *See* Local Civ. R. 26.3(c)(7).

> The same is true for "Communications." *See* Local Civ. R. 26.3(c)(1).

> So, the claim that, for example, "'all Documents concerning communications'

is overly broad and vague and ambiguous" is simply a complaint about the Local Rules, and without any basis in law. Doc. Responses at p. 34.

Accordingly, these objections are improper and must be withdrawn.

xxi.    In Response to Document Demand Nos. 15, 17, 18, 19, 28, 29, 32, 33, 34, 35, 36, and 44 Defendants object on the grounds that the phrase "all Documents" is vague.

This boilerplate objection should have long since been removed from the City's stock responses.

The City was sanctioned (at least in part) for its incoherent complaint about "all Documents" in *In re Policing. In re New York City Policing During Summer 2020*, 2020-cv-8924 (CM)(GWG), 2022-02-11 Tr. at 14-15 (cleaned up, emphasis added):

> Ms. Weiss, I have to say this line of argument makes no sense to me. From what I've gathered, what actually is typically happening is that City is producing some materials, the plaintiffs are noticing it's not all, you're conceding, as you just did now in your discourse that you then come up with it, and they're right, you did violate the order. […]
>
> ***So no one is being set up when they're being told to produce all documents on a topic, that happens every single day in every single litigation.***"

So too here. There is no basis to object to "all documents" on a topic, that is just daily litigation.

xxii.   In Response to Document Demand Nos. 15, 20, 36, and some others, Defendants make a variety of objections to phrases like "any incidents," "related complaints," "other Documents collected, considered, or reviewed" and "any occurrence that happened" are vague and ambiguous.

As with the "all documents" objection, the claims the "any incidents," "related complaints," and the like are somehow vague are not worth addressing in this context, given the discussions of similar issues above. Again, if there is sincere confusion, we are happy to address it, but this boilerplate is meaningless and improper.

We expect these objections to be promptly withdrawn.

xxiii.  In Response to Document Demand No. 16, Defendants object on the grounds that the term "similarly defined records" is vague and ambiguous. Doc. Responses. at pp. 29-31

This objection is hard to understand. The full phrase, in context, is "Performance profiles, or similarly defined records."  Historically, we

10

understand the City has created a document it calls a "Performance profile."  If it has given it a new name, that would be a "similarly defined record."  There is nothing vague here.

xxiv.    In Response to Document Demand No. 20, Defendants object on the grounds that phrases "received by, referenced, or reviewed" and "documenting occurrences and/or interactions between Officers and civilians" are overly broad and vague and ambiguous.  Doc. Responses at pp. 34-35.

Defendants' objections are baseless.  Either the identified people have reviewed, received, or referenced documents about the interactions between Officers and civilians at Schedule A protests or they haven't.  If they have, Defendants must produce those documents.

xxv.    In Response to Document Demand No. 22, Defendants object on the grounds that phrase "received or reviewed by Corporation Counsel" is vague and ambiguous.

Defendants disingenuously claim to not understand "received or reviewed by Corporation Counsel" in the context of a request that seeks "all non-privileged communications, in Defendants' possession[,] custody, or control concerning the December 30, 2020 Corporation Counsel Report Pursuant to Executive Order 58 (June 20,2020) Directing an Analysis of Factors Impacting the George Floyd Protests in New York City, including any and all Documents received or reviewed by Corporation Counsel in preparing such report."

In preparing the report, the Corporation Counsel reviewed and received many documents.  Some of those were not privileged.  And accordingly, they must be produced.

xxvi.    In Response to Document Demand No. 23, Defendants object on the grounds that phrase "received or reviewed by DOI" is vague and ambiguous.  Doc. Responses at 37-38.

As with Request 22, this objection is disingenuous for the same reasons.

xxvii.    In Response to Document Demand Nos. 30 and 31 Defendants object on the grounds that the phrases "'white power' symbol" "racist statements," and "racist conduct" are overly broad and vague and ambiguous.

These phrases are assigned its ordinary, dictionary definition, meaning organizations that are prejudiced or antagonistic toward a particular racial or ethnic group, or organizations that believe white people constitute a superior race and should therefore dominate society, typically to the exclusion or detriment of other racial and ethnic groups.

xxviii.    Similarly, in Response to Document Demand Nos. 32, 33, and 34, Defendants object on the grounds that the phrases "possible affiliations" and "racist or white supremacist organizations," "other far-right or neo-Nazi organizations," and "online far-right/racist

message boards, such as the Law Enforcement Rant site" are overly broad and vague and ambiguous.

This is not vague, especially given the context (and Defendants' claim to the contrary is troubling):  "Documents concerning any investigation into, or assessments of, NYPD officers' possible affiliations with racist or white supremacist organizations."  If there are no investigations, there is nothing to be confused over.  Likewise, if the City has investigated racist ties of NYPD officers, that the documents are responsive to this should be clear from the investigation.  "*Possible* affiliations" merely accounts for the fact that an investigation might not turn up *actual* affiliations.

Last, in the unlikely event that there *is* some responsive investigation, but it is *not* clear to you whether it would count as "far-right" or "racist," we are happy to provide more specific guidance.

xxix.    In Response to Document Demand Nos. 35, 36, 37, and 38, Defendants object on the grounds that "'racist language' [is] overly broad and vague and ambiguous,[4]" and make similar objections to "racial epithets."  Doc. Responses at pp. 47-52.

As above, the context here are requests like the request for documents concerning "discipline of any NYPD officer for use of racist language during the Protests."  So, Defendants' cannot seriously claim this is ambiguous.  Indeed, just as an illustration, one category for CCRB discipline is "Offensive Language: Race." So, those would qualify.  Likewise, a broader investigation into the use of offensive language at relevant protests, if one took place, would also qualify.  If no such investigation or discipline happened, Defendants can also say so.  But nothing is vague.

xxx.    In Response to Document Demand No. 39, Defendants object on the grounds that the phrase "'person related to a protest or demonstration' is vague and ambiguous."  Doc. Responses at p. 53.  Similarly in Document Demand Nos. 40 and 41, Defendants say that "outside of a protest or demonstration" is somehow vague.  *Id.* at pp. 53-54.

Request 39 seeks records concerning "who is authorized to determine" when such a person "may be released with a Summons or DAT, including any relevant NYPD Patrol Guide provisions." It is not clear how this is vague: People at a protest may be released with the Summons or a DAT, instead of suffer of custodial arrest.  Someone makes that decision.  And when someone is perceived as affiliated with a protest, as found in one the RNC class actions, the City sometimes sweeps them up in the enforcement.

Similarly, 40 and 41 seek records related to protest-specific arrest processing, including arrests made "outside" a protest, as was the case in the RNC class mentioned above.

---

[4] Notwithstanding the double "and" here, we are not using "[sic]," as the Responses do for minor errors — and some non-errors — throughout.

Accordingly, this is not vague;  It just asks for documents concerning how the decisions to make custodial arrests — rather than issuing on the street process — are made.

xxxi.    In Response to Document Demand No. 42, Defendants object on the grounds that the phrase "other records reflecting the NYPD training" is vague and ambiguous.

This request is clear. Defendants know what records reflect the training they give.  They can produce them.

xxxii.    In Response to Document Demand No. 43, Defendants object on the grounds that the phrases "each and every dataset" and "any and all data dictionaries" are vague and ambiguous.

This request is clear.  The claim is difficult enough to understand that Plaintiff cannot say more than the fact that these words should be assigned their ordinary English meanings.

xxxiii.    In Response to Document Demand No. 45, Defendants object on the grounds that the phrase "on the basis of their use or display" is vague and ambiguous.

Again, it is very difficult to credit Defendants' claim they supposedly do not understand this phrase, in the context of a request seeking documents concerning, for example, an "investigation by the NYPD … of any individual on the basis of their use or display of a keffiyeh." If the NYPD has investigated someone in part or in whole because they wore a keffiyeh, documents concerning that investigation are responsive.

xxxiv.    In Response to Document Demand No. 46[a[5]], Defendants object on the grounds that the phrases "and the like," "relevant related products," 'related products," "safer models of flexcuffs," "similar measures," flexcuff related production," "other similar device," and "decision about the implementation of flexcuffs" are vague and ambiguous.

Again, Defendants' confusion is hard to credit.  If this objection is sincere, we would appreciate some elaboration.  This Request covers documents about flexcuffs, including any research into alternatives or other vendors, etc., than the ones currently in use.  It should not be difficult to determine what documents are responsive to this request.

xxxv.    In Response to Document Demand No. 46[b], Defendants object on the grounds that the phrases "and the like" is vague and ambiguous, and the phrase 'origin of Defendants' choice" is vague and ambiguous as it is unclear what time frame the "origin" lasts for and it assumes facts not established, i.e., that a conscious choice was made to train members of NYPD about using VTL § 1156(a) as a basis for charges at protests or demonstrations.

---

[5] The Requests accidentally had two requests numbered 46.  We will assign the first one "a" and the second "b."

"And the like" has its ordinary meaning.

As for "origin of Defendants' choice," VTL § 1156(a) has literally only *ever* been used at a protest. It was not used at all until a certain point, and then became a standard protest charge. Individual Officers did not receive training on 1156(a) until that point, and thereafter, they did. This change in policy and practice did not come into being, Athena-like, from the minds of each individual officer.

We believe a reasonable investigation would leave no ambiguity on this request. If, after a sincere investigation and conversation with your client, you still do not understand the request, we can meet and confer, but would ask a person from the client with relevant knowledge to attend, in light of this response.

**c. Defendants have misused the objection "compound"; it is not valid and should be removed.**

Defendants Responses to Document Requests 1-5, 7-9, 25, and Interrogatory No. 6 object to the Requests and Interrogatories as "compound" because the they have subparts or request multiple documents, or multiple relevant pieces of information or kinds of people. "Compound" is not a valid objection in this context and nothing in the Federal Rules prohibits asking for multiple documents or categories of documents in a single Request. Nor is there anything in the Federal Rules that somehow prohibits an Interrogatory on the basis "that it seeks that [sic] identity of civilians and members of service in the same interrogatory." If Defendants have specific objections to any document or category of documents or interrogatory, they must make that objection with specificity, as required under the 2015 Amendments, discussed above.

**d. Defendants cannot object to valid Requests by claiming the documents are public, or that Plaintiff has them already.**

i.  Documents produced in *In Re: New York City Policing During Summer 2020 Demonstrations,* 20-CV-8924(CM)(GWG).

Defendants' further object on unrecognizable grounds, namely "and to the extent that these documents have previously been produced to or by Plaintiffs' counsel in connection with prior litigation or Plaintiffs' counsel's role in the implementation of prior settlement agreements and thus are equally available to Plaintiffs as to Defendants." Responses and Objections to Document Requests Nos. 1, 2, 14 and Interrogatory No. 14.

We assume Defendants are referring to *In Re: New York City Policing During Summer 2020 Demonstrations*, 20-CV-8924(CM)(GWG). That the City may have produced responsive documents in previous cases involving the undersigned is not a basis to refuse to produce documents in other matters with the undersigned. In addition, discovery in that matter as well as implementation of the settlement agreement are subject to a protective order. See *Id.,* Dkt. Nos. 115 and 1190.

If your client would like to remove that designation, we will consider that proposal. Even then, Defendants would still need to identify responsive documents and we would need to confirm if we

14

have them in our possession. As of now, the City is obligated to produce responsive documents that it has not claimed is not in its possession.

    ii.        "Publicly Available Documents"

Defendants' Responses to Requests 1, 2, 4, 8, 12, 39, 40, 41 in sum and substance, that Defendants need not produce documents or information because Plaintiffs already have it or that the documents and information are somehow public, is not a valid objection.

At the outset, the factual basis for these objections is unsound. The Patrol Guide is posted online, but it is redacted and missing many vital sections — to say nothing of the fact that it has changed many times over the last two decades.[6] Additionally, much of what Plaintiffs request is not online even in an incomplete and unverified fashion. While there is a list of training programs, from an internal NYPD online database, it lacks many basic search features. It would take Plaintiffs substantial time to obtain the information, while Defendants, who have access to the actual data, can simply export it. And many internal documents relevant to this case are not online or public in any form.

As an adjacent point, Defendants surely do not intend to suggest they concede the authenticity of every document Plaintiffs and their counsel might have in their possession. But without such a concession, these objections cannot lie — at least without a specification of which records, exactly, Plaintiffs have or are public, a stipulation that those records are authentic, and an agreement to produce everything else. And as Defendants well know, the Patrol Guide online is not complete. And the Patrol Guide is hardly the only record responsive to these Requests. Thus, absolutely nothing about the records requested is equally available to Plaintiffs. So, Defendants must either (1) produce or (2) identify and authenticate the documents responsive to these requests. *Charter Practices Intl., LLC v Robb*, 2014 US Dist LEXIS 8166, at *6-7 (D Conn Jan. 23, 2014); *National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009); *Fosselman v. Gibbs*, No. C 06-0375, 2008 U.S. Dist. LEXIS 82697, 2008 WL 745122, at *4 (N.D. Cal. Mar. 18, 2008) ("the objection that information is equally available to the questioner is not a proper objection"); *Foti ex rel. Louisiana v. Eli Lilly & Co.*, 2008 U.S. Dist. LEXIS 55780, 2008 WL 2858617, *3 (E.D.N.Y. 2008) ("Mississippi's 'equally available' objection deprives Lilly of basic information concerning the nature of that State's claims"); *Chinn v Elmwood Franklin Sch.*, 2018 US Dist LEXIS 188307, at *12 (WDNY Nov. 1, 2018).

    **e. Defendants' use of the evidentiary objection "assumes" is not appropriate for an objection to a documents request.**

In the Responses to Requests 8, 10, 13, 43, 45, and Interrogatories 4 and 15, Defendants object by arguing that the Requests or Interrogatories "assume" some fact that the Defendants disagree with. This may be a valid evidentiary objection, but it is not a valid objection to a document request or interrogatory. Defendants either have the documents or they do not. If they do not have the documents, there is nothing to produce.

---

[6] And, beyond that, the City routinely objects at depositions to the authenticity of the Patrol Guide provisions printed from the online version. Given routine practice of making such objections, the argument that Defendants need not respond to these requests because Plaintiffs should just print out the online version only serves to unnecessarily multiply the proceedings here.

Specifically, regarding Interrogatory No. 4, "Defendants further object to this interrogatory on the grounds that it assumes facts not established, i.e., that officers from the NYPD Legal Bureau had some undefined involvement with the policing of these protests." Defendants' objection alleging Plaintiffs made an assumption as to said officers' involvement is no different than Defendants assuming none of said officers were involved.  If Defendants conducted a search and found that no officer from the NYPD Legal Bureau had any involvement – any meaning input of any kind, with the policing of the protests listed in schedule A, then Defendants should so state.

Interrogatory No. 15 seeks to identify Does, and Plaintiffs have identified actions committed by members of service throughout the complaint. Defendants are obligated to identify Does. This is a class-action about every protest about police brutality according to Schedule A. Even in single plaintiff cases, the City must identify individual Doe defendants. And Defendants must identify the Doe defendants that assaulted not just the named Plaintiffs, but every plaintiff.

Defendants Response to Requests 7-11, 14, 15, 17, 29, 30, 36-38 and Interrogatories 6-9, 45, 46 that "Defendants further object to the extent that this interrogatory implicates the privacy interests and personal safety interests of non-parties" is improper.  Simply not yet being a party is not a cause to refuse discovery when there are countless Does and the discovery sought would help identify those Does.  Each of the officers at issue (1) has relevant knowledge as a witness of NYPD brutality, and (2) could be a Doe defendant in the class actions, particularly because all of these requests seek to discover information about officers who have either been accused of misconduct at the protests, or already have been disciplined for it.  Beyond that, the notion that — where Defendants are asserting that (1) no misconduct happened at the protests and (2) all misconduct is fully addressed by not-even-complete partial reforms — investigations into misconduct of officers are not relevant is absurd.  And that remains true even if there were no chance of those officers becoming parties: Those investigations go directly to Plaintiffs' *Monell* claims (particularly the failure to discipline claims).

f. **Defendants' objection to producing "all" documents responsive to a Request as burdensome, or just unexplained assertions of "burden," without stating in detail why, is improper.**

As noted above, in Response to Requests 1, 2, 4, 12, 17, 24, 25, 27-30, 35, 39-41,44-47, Defendants claim that producing "all" responsive documents is burdensome, overly broad, not limited to a time period pertinent to this litigation, not "proportional to the needs of the case" and that the "burden" of producing these documents outweighs "any likely benefit." These objections are exactly what the 2015 Amendments prohibit: "meaningless boilerplate. Why is it burdensome? How is it overly broad?" *Fischer*, 2017 US Dist LEXIS 28102, at *8. Yet, each of these responses is almost word-for-word identical. It should be noted that, "[b]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy" are "a paradigm of discovery abuse." *McCloud v City of NY*, 2025 US Dist LEXIS 266803, at *9 [EDNY Dec. 29, 2025, No. 23 CV 8341 (NRM) (CLP)])(citing, Jacoby v. Hartford Life & Acc. Ins. Co., 254 F.R.D. 477, 478 (S.D.N.Y. 2009).

As noted above, the City has been sanctioned for this kind of response, and we will seek similar sanctions if the City does not withdraw it.  "[N]o one is being set up when they're being told to produce all documents on a topic, that happens every single day in every single litigation." *In re New York City Policing During Summer 2020*, 2020-cv-8924 (CM)(GWG), 2022-02-11 Tr. at 14-15.

Likewise, Defendants interpose the same boilerplate objection for Interrogatories 6-13 without

16

any specificity. This failure to even recite a burden—let alone explain how that burden is undue belies the objection. *Fischer*, 2017 US Dist LEXIS 28102, at *9.  In short: Plaintiffs are entitled to "all" the relevant documents, unless Defendants can actually articulate a specific reason why producing these documents is particularly difficult. A general objection to producing "all" relevant documents is meaningless and only serves to multiply proceedings. Similarly, Plaintiffs are entitled to have Defendants fully answer their Interrogatories, unless Defendants articulate a specific reason answering is burdensome, which Defendants have not done. Should Defendants seek to advance a burden argument, they must, submit an affidavit "from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988)(citation omitted). This declaration must show specifically what harm the redactions or privileges are attempting to address. *Schiller v. City of New York*, 252 F.R.D. 204, 207 (S.D.N.Y. 2008). Defendants must either withdraw these objections, or unambiguously commit to revising them to describe the exact reasons why producing the documents or answering the interrogatories is (unduly) burdensome within 5 days, at or before our meet confer.

**II.    Defendants are improperly limiting *Monell* discovery; the decades-long pattern of similar misconduct by the NYPD at other protests is relevant.**

   **a.   Defendants improperly object as to the time period requested without stating what time period Defendants believe is relevant.**

Defendants have interposed various objections, all of which essentially state that the Defendants will not be producing documents or information because, Defendants allege, the time period requested is too broad. Defendants specifically object that that Request Nos. 46, 16 and Interrogatories Nos. 8-14 are unlimited in time and scope, are overly broad and not reasonably limited to a time period pertinent to the April 30, 2024 protest at issue in this litigation. Or in the alternative, Defendants have unilaterally decided to limit discovery to one date, despite this matter being a proposed class action and Schedule A containing itemized protests for which information is sought. Defendants state:

> "Notwithstanding and without waiving or limiting these specific objections, and limiting this response to communications about the policing of the April 30, 2024 protest at issue in this litigation, Defendants state that they will search for non-privileged communications between custodians to be agreed upon by the parties and will supplement on a rolling basis, if appropriate. Document Request. No. 20

> "Notwithstanding and without waiving or limiting these specific objections, and limiting this response to the training transcripts of the individually named defendants, Defendants state that they are continuing to search for documents responsive to this request and will supplement on a rolling basis, if appropriate. Document Request." No. 42

> "Notwithstanding and without waiving or limiting these specific objections, and limiting this response to policy memos and training to members of the NYPD about VTL §1156(a) as a basis for charges at protests or demonstrations, in effect on April 30,2024, Defendants state that they are continuing to search for documents responsive to this request and will supplement on a rolling basis, if appropriate." Document Request. No. 46.

In order to prove *Monell* liability, particularly the long pattern of deliberate indifference to the rights of protestors, Plaintiffs need and are entitled to documents showing what Plaintiffs assert is a two-decade pattern of constitutional violations by the NYPD before the protests in October of 2023

including the prior policies and procedures, and how those policies and procedures have (or have not) changed. Defendants must conduct searches for relevant information as enumerated in Document Request No. 36.

b. **Requests Nos. 7 and 17 are limited to protests in Schedule A**.

In copy and pasting the same objection to nearly all documents requested, Defendants object "on the grounds that it is overly broad as it seeks documents pertaining to over one hundred (100) protests over a period of more than twenty (20) years, including information about members of service who were not present at the protest of April 30,2024 at issue in this litigation or even employed by NYPD at that time." However, Request No. 7 begins with "For each Protest Location listed in the attached Schedule A…" and Request No. 17 refers to "Protests" which is defined in Plaintiffs' demands as those listed in Schedule. A which do not span 20 years. Therefore, the objections are without basis and Defendants must revise this response to produce relevant documents.

### III.   Defendants improperly refuse to produce material and relevant discovery

Defendants have also simply declared they will not produce any further material for obviously relevant requests.  Defendants have not produced any training materials in response to Document Requests 3, 4, and 5, for example, declaring "No further response will be interposed."  Or, in Requests 14 and 15, which seek documents regarding any investigation into the specified protests in Schedule A (all picked because they fall within the class in *Makkawi* and reflect the same policies at issue in this case), without any serious explanation, Defendants say the same.

The Federal Rules require that any "objection to part of a request must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(b)(2)(C).  It is hard to imagine that Defendants **sincerely** think that, for example, they are not required to produce documents concerning investigations into the specific protest at issue in this case directly — but that is what Defendants' response says.

An egregious example is the Response to Request No. 46.  Request No. 46 seeks to dig into the facts around NYPD's use of flex-cuffs and the way those cuffs consistently cause serious injuries to protesters.  As set out in the FAC (ECF No. 9), one of the major policies challenged here is the City's choice of (presumably[7]) cheap, rather than safe flexcuffs, avoiding ones with double-locking mechanisms, padding, or other safety features. *See, e.g.,* FAC ¶¶ 114, 153(g), 195, 286, 288(b).

This lack of actual explanation for withholding pervades the responses, including to Requests 4, 14, 15, 20, 22, 23, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 43, 45, and 46a.

### IV.   C.P.L. §160.50 and HIPAA

In response to Interrogatories No. 8, 9, 16 and Requests Nos. 7-11, 13-15, 17, 20, 22, 23, 36-38, 46, Defendants object "to the extent that it impermissibly seeks discovery of absent putative class members and seeks documents or records protected from disclosure by the doctor/patient privilege, and/or other applicable privileges and/or HIPAA, to the extent that portions of this request seek documents which are not in Defendants' possession, custody, or control, and to the extent that this request seeks documents that are sealed pursuant to C.P.L. §§160.50 and/or 160.55, and implicates the

---

[7] It may be that the less safe kinds of flexcuffs are not even cheaper — that is why we are seeking discovery.

privacy interests and personal safety interests of non-parties". For C.P.L. § 160.50, Plaintiffs propose the parties make a joint motion for an Order unsealing any documents sealed under 160.50, and relating to the arrest of protestors at the protests Plaintiffs identified in Schedule A.

On HIPAA, Defendants' objections as they stand are inadequate and they fail to state, without even a suggestion, of what those documents might be. These boilerplate objections are not sufficient. HIPAA only applies in certain circumstances, and to certain entities. Yet the objections do not explain how Defendants are acting as a health plan, health care clearinghouse, or healthcare provider to either officers or third-parties. If Defendants are not a covered entity, HIPAA simply does not apply. And Defendants are not. Plaintiffs ask that Defendants state, at or before our meet and confer, whether they intend to provide appropriate releases. Defendants must amend their improper HIPAA objections to explain how, exactly, the records sought implicate HIPAA, or otherwise withdraw the objections.

## V.     Failure to Produce Privilege Logs

Defendants have repeatedly asserted various claims of privilege in its response: "Defendants further object to the extent that this request implicates the attorney-client, attorney work-product, law enforcement, official information, and/or deliberative/pre-decisional privileges…" Interrogatories Nos. 7 and Document Requests Nos. 1, 2, 7, 16- 23, 28, 29.

Rule 26(b)(5)(A) of the Federal Rule of Civil Procedure provides that a party withholding discoverable information on the grounds of privilege or subject to protection as trial preparation material must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Local Civil Rule 26.2 also imposes requirements on litigants with respect to providing specific information regarding any privilege assertion at the time the assertion is made.

Further, if the Defendants are going to assert other privileges, such as the law enforcement privilege or the deliberative process privilege, they must do so soon, so any disputes can be resolved. Even if Defendants cannot identify every specific document, they might assert a privilege over because their review is incomplete, Defendants must know the categories of documents, and ongoing investigations, that are likely relevant. And beyond that, Defendants have asserted privileges—which a party cannot do without a good faith basis. Thus, we ask that Defendants state what categories of documents, and what ongoing investigations, warrant withholding documents based on the privilege, at or before our meet and confer, so Plaintiff can evaluate the merits of this claim and the parties can resolve any disputes expeditiously.

## VI.     Defendants must each respond to and verify the Interrogatories.

Rule 33(b) of the Federal Rules of Civil Procedure require that the parties to whom interrogatories are directed answer them in writing and sign and verify them under oath. Answers provided by attorneys do not suffice. However, Rule 26(g) requires that attorneys sign and certify that the disclosure is "complete and correct as of the time it is made" and that all objections included are appropriate. Relatedly, a party responding to an interrogatory must provide answers based on reasonable investigation of documents and other information in and related to the case. *See, e.g., Trueman v. N.Y. State Canal Corp.*, No. CIV. 1:09-CV-049 (LEK)(RFT), 2010 WL 681341, at *5 (N.D.N.Y. Feb. 24, 2010) (Treece, M.J.); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*

563 B.R. 737, 750 (Bankr. S.D.N.Y. 2017).

Beyond that, "[t]he responding party must provide the best answer they can based upon current information in their possession" and "[e]ach answer must be based upon all of the information at the responding party's" and their "attorney's disposal." *Trueman*, 2010 WL 681341, at *2 and 5. Additionally, interrogatory responses (and written responses to document demands) are evidence, see Fed. R. Civ. P. 33(c) ("An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence"), and can constitute party admissions at trial, *see, e.g., Skinner v City of NY*, No. 15-CV-6126(KAM)(JO), 2017 US Dist LEXIS 104650, at *14-15 (EDNY Apr. 7, 2017); *see also, e.g.., Gaul v Chrysler Fin. Servs. Ams. LLC*, No. 1:13-CV-433 (TJM/RFT), 2014 US Dist LEXIS 52449, at *30 (NDNY Apr. 16, 2014) (identifying among the "general aims" of interrogatories to "serve as admission[s] for trial").

Similarly, Fed. R. Civ. P. 33(b)(3) requires that each interrogatory response be answered "fully." If an interrogatory cannot be answered fully, "despite conducting a diligent inquiry," "any efforts utilized should be set forth in detail to ensure a sufficient response is interposed." *Harris v. Bronx Parent Hous. Network, Inc.*, No. 18-CV-11681 (GBD)(SN), 2020 WL 763740, at *2 (S.D.N.Y. Feb. 14, 2020); *Zanowic v. Reno*, No. 97-CV-5292 (JGK)(HBP), 2000 WL 1376251, at *3 n.1 (S.D.N.Y. Sept. 25, 2000) ("[A] party's failure to describe his efforts to obtain the information sought by plaintiffs renders his responses insufficient."). No attempt to set forth efforts made to answer the interrogatories was made, so we assume this is not at issue, and Defendants are simply not disclosing information. However, to the extent that information is not available, Defendants must describe their efforts.

Under Fed. R. Civ. P. 26(g)(2), "[o]ther parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention." In this case, none of the interrogatory responses provided are signed or verified by the parties under oath. Additionally, the responses do not appear to be the "best answer" the responding party can provide "based upon all of the information at the responding party's" and their "attorney's disposal."

We therefore demand that each Defendant provide appropriate, signed, verified interrogatory responses. Plaintiffs intend to treat these unverified responses as non-answers.

Further, in providing those new interrogatory responses, we demand that Defendants refrain from interposing the improper, boilerplate objections and purported privilege assertions that we have complained about in regard to Defendants' discovery responses.

We also demand that each individual Defendant be asked what they know about each requested topic, not just that they sign boilerplate forms. The Interrogatories are propounded on the City of New York and each individual, and Plaintiffs are entitled to what each person knows.

## VII.    Defendants must provide a date by which it will produce responsive material

Fed. R. Civ. P. 33(b)(3) requires that each interrogatory response be answered "fully." If an interrogatory cannot be answered fully, "despite conducting a diligent inquiry," "any efforts utilized should be set forth in detail to ensure a sufficient response is interposed." *Harris v. Bronx Parent Hous. Network, Inc.*, No. 18-CV-11681 (GBD)(SN), 2020 WL 763740, at *2 (S.D.N.Y. Feb. 14,

2020); *Zanowic v. Reno*, No. 97-CV-5292 (JGK)(HBP), 2000 WL 1376251, at *3 n.1 (S.D.N.Y. Sept. 25, 2000) ("[A] party's failure to describe his efforts to obtain the information sought by plaintiffs renders his responses insufficient."). Throughout its responses and objections, Defendants represent they will continue to search for responsive documents and either produce them within 45 days or will supplemental on a rolling basis "if appropriate". Interrogatories Nos. 2-4, 10, 11 and 14 and Document Requests Nos. 6, 18, 19, 20, 42, 46b.

Defendants' supposed commitment to produce information is also undone by the condition of whether it deems it appropriate. Defendants must produce all responsive information from these searches or follow the appropriate rules, including articulating a basis for withholding, privilege or other grounds relied upon in not producing information. Whether the City deems information "appropriate" it not a recognized ground upon which it may withhold information.

Sincerely,

Tahanie A. Aboushi, Esq.

21